UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| ARACELI HANEY, | ) | |
| | ) | 2:10-cv-02072 JWS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

Claimant, having exhausted her administrative remedies, filed a Social Security Complaint alleging the final decision of the Social Security Commissioner was erroneous as a matter of law and regulation.[1] Claimant filed an Opening Brief on the Merits.[2] Defendant filed a Memorandum in Opposition.[3] Claimant did not file a reply.

## II. BACKGROUND

The thirty-nine year old Claimant filed an application for disability insurance benefits on April 2, 2008, and alleged a disability onset date of October 17, 2007.[4] Her application

---

[1] Doc. 1.
[2] Doc. 17.
[3] Doc.22.
[4] Administrative Record at 29, 124 [hereinafter "AR."].

was initially denied on August 8, 2008,[5] and her request for reconsideration was turned down on October 6, 2008.[6] Claimant's request for a hearing before an Administrative Law Judge ("ALJ") was granted, and the hearing was held April, 30, 2009.[7]

At the hearing, Claimant, represented by her attorney, testified on her own behalf. Claimant testified that she has a G.E.D and has finished vocational training schools in word processing and law enforcement.[8] She worked in law enforcement for about 16 years.[9] Claimant also testified that she stopped working on October 17, 2007, and hasn't been back to work because of her liver disorder and other impairments.[10] She has no other sources of income besides welfare.[11]

The record indicates she was living with her mother in an assisted living senior home at the time of the hearing.[12] She has two children, one seventeen-year-old boy and one twenty-year-old daughter.[13] Claimant seeks disability for her worsening liver condition and multiple impairments that inhibit her work performance. Weighing 185 lbs., at 5'5", she has had significant weight gain over the years because of her poor liver health, which has lead to an inability to lose weight. She indicated that she hardly ever eats, typically consuming two Jell-O cups, a banana, and a piece of cake per day.[14] Claimant testified that she has stomach pain as a result of her liver condition.[15] Claimant indicated the pain is so severe

---

[5] AR 14.
[6] *Id.*
[7] *Id.*
[8] AR 31–2.
[9] AR 32.
[10] *Id.*
[11] AR 40.
[12] *Id.*
[13] *Id.*
[14] AR 45.
[15] AR 33.

that it interferes with daily living activities such as household chores.[16] She testified that she coughs up blood five times a day.[17] She also suffers from a bulging disc in her lower back, which she says is inoperable because of her liver condition.[18]

In addition to stomach and back pain, Claimant also claims to suffer from hand stiffness.[19] She testified that her hands and legs fall asleep constantly making it difficult to write or drive.[20] Claimant said her hands will tighten in a position and stay that way, having to be peeled back.[21] The stiffness prevents her from bending and picking up heavy objects.[22] Claimant also suffers from depression, migraines, and insomnia.[23] She testified she has trouble concentrating and with short term memory.[24]

Claimant listed 15 different medications which she takes for her various conditions.[25] She testified that the medications contribute to some of her impairments because of their side effects.[26] These side effects include dizziness, nausea, vertigo, numbness in her legs, throwing up, and some stomach pain.[27]

In addition to Claimant, a vocational expert testified at the hearing.[28] Responding to a hypothetical question, he testified that a person with the same age, education, and work history, and general impairments would be able to perform customer service and secretarial

---

[16] *Id.*
[17] AR 37.
[18] AR 34.
[19] AR 35.
[20] AR 35, 39.
[21] AR 35
[22] AR 38.
[23] AR 35–6.
[24] AR 40.
[25] AR 37.
[26] AR 42.
[27] *Id.*
[28] AR 47–50.

jobs.[29] However, the expert indicated that these jobs could not be performed without sustained concentration and persistence.[30] With a lessened ability to concentrate he testified that the jobs of assembly worker and quality control inspector could be performed.[31] The expert further indicated that the assembly worker and quality control inspector positions cannot be performed without hand dexterity and grip. Assuming these additional impairments, the expert testified that no job would exist in the market that could adequately be performed.[32]

Claimant"s medical records are voluminous. Having reviewed the records, the court concludes that the summary of those records in the Commissioner's response is correct and adopts the same for use in this order.[33] Lay statements in the record are also appropriately summarized in the Commissioner's briefing, and the court adopts them as well.[34]

The ALJ concluded that considering Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform.[35] Thus, the ALJ found the Claimant was not disabled as defined under the Social Security Act.[36]

Claimant seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) of the Social Security Act, and she asks the court to reverse the ALJ's decision and enter

---

[29] AR 48.
[30] *Id.*
[31] *Id.*
[32] AR 50.
[33] Doc. 22 at 2–14.
[34] *Id.* at 4–16.
[35] AR. 23.
[36] AR. 24.

judgment remanding for payments of benefits. The Commissioner opposes the motion arguing the denial of benefits is supported by substantial evidence and free of legal error.

### III. STANDARD OF REVIEW

Factual finding by the Commissioner/ALJ are conclusive if supported by substantial evidence.[37] A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence, or is based upon legal error.[38] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[40] In making its determination, the court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the Commissioner's conclusion.[41] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[42]

*A. Disability Determination*

The Social Security Act ("the Act") provides for payment of disability insurance benefits ("DIB") to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[43] Disability is defined in the Social Security Act as follows:

---

[37] *See* 42 U.S.C. § 405(g).
[38] *Matney on Behalf of Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).
[39] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).
[40] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975).
[41] *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).
[42] *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir. 1984).
[43] 42 U.S.C. § 423(a)(1).

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[44]

The Act further provides:

An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[45]

The Commissioner has established a five-step process for determining disability. The Code of Federal Regulations explains:

The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.[46]

The five steps are as follows:

**1. Substantial Activity:** Determine whether a claimant is involved in "substantial gainful activity." If so, disability status is denied.[47] If not, the decision maker proceeds to Step 2.

---

[44] 42 U.S.C. § 423(d)(1)(A).
[45] 42 U.S.C. § 423(d)(2)(A).
[46] 20 C.F.R. §§ 404.1520(4)(2011), 416.920(4)(2011).
[47] 20 C.F.R. §§ 404.1520(a)(4)(i)(2011), 416.920(a)(4)(i) (2011).

**2. Severe Impairment:** Determine whether a claimant has a medically severe impairment or combination of impairments.[48] A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities, and does not consider age, education or work experience.[49] If a claimant does not have a severe impairment or combination of impairments that satisfies the duration requirement in 20 C.F.R. § 416.909, the disability claim is denied at this step. If, on the other hand, it is found to be severe, the decision maker goes on to the third step.

**3. Listed Impairments:** Determine whether the impairment is the equivalent of a number of listed impairments that are so severe as to preclude substantial gainful activity.[50] If the impairment is the equivalent of one of the listed impairments in 20 C.F.R. § 404 Subpt. P, App. 1 (2011) and meets the duration requirement, a claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.

**4. Past Employment:** Determine whether the impairment prevents the claimant from performing work performed in the past. At this point the analysis considers the claimant's residual functional capacity and past relevant work. If a claimant can still do his or her past relevant work, the claimant is deemed not to be disabled. If a claimant cannot perform past relevant work, the evaluation process moves to the fifth and final step.[51]

**5. Future Employment Potential:** Determine whether a claimant is able to perform other work in the national economy in view of his or her age, education, and work

---

[48] 20 C.F.R. §§ 404.1520(a)(4)(ii)(2011), 416.920(a)(4)(ii) (2011).
[49] 20 C.F.R. § 416.920(c)(2011).
[50] 20 C.F.R. §§ 404.1520(a)(4)(iii)(2011), 416.920(a)(4)(iii)(2011); 20 C.F.R. pt. 404, Subpt. P, App. 1 (2011).
[51] 20 C.F.R. §§ 404.1520(a)(4)(iv)(2011), 416.920(a)(4)(iv) (2011).

experience, and in light of the residual functional capacity. If so, a claimant is not disabled. If not, the claimant is considered disabled.[52]

A claimant bears the burden of proof at steps one through four.[53] The burden shifts to the Commissioner at step five.[54] The Commissioner can meet this burden "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines."[55] The Medical-Vocational Guidelines are commonly referred to as "the grids." If a claimant's residual functional capacity and vocational characteristics correspond precisely to the grids, the grids are used to direct a finding of "disabled" or "not disabled."[56] The grids may be used alone at step five where they "completely and accurately represent a claimant's limitations. In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work."[57] The Ninth Circuit has explained that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate.[58] Pain can be a non-exertional limitation. But, mere allegation of a non-exertional limitation "does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations."[59] Where the grids do not accurately reflect the claimant's limitations, the testimony of a vocational expert is necessary.

---

[52] 20 C.F.R. §§ 404.1520(a)(4)(iv)(2011), 416.920(a)(4)(iv) (2011).
[53] *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[54] *Id.*
[55] 20 C.F.R. § 404, Subpt. P, App. 2 (2011); *Apfel,* 180 F.3d at 1099.
[56] 20 C.F.R. § 404, Subpt. P, App. 2, § 200.00 (2011).
[57] *Tackett*, 180 F.3d at 1101 (emphasis omitted).
[58] *Id.* at 1101–02.
[59] *Id.* at 1102.

## IV. DISCUSSION

The ALJ found at Step 1 that Claimant has not engaged in substantial gainful activity since October 17, 2007.[60] At Step 2 she found Claimant has severe impairments of: "nonalcoholic steatohepatits ("NASH"), fibromyalgia, obesity, bilateral hand paresthesias, lumbar degenerative disc disease, major depressive disorder."[61] The ALJ further noted that Claimant has previously worked with and is being treated for "vertigo, dizziness, epistaxis, reactive airway disease, gastroesophageal reflux disease with mild esophagitis, migraines, mild diverticulosis and irritable bowel syndrome."[62] The ALJ found these and Claimant's reported hypoglycemia to be non-severe.[63]

At Step 3 the ALJ found Claimant does not have an impairment that meets or medically equals one of the listed impairments.[64] The ALJ reasoned that there was no "radiographic findings consistent with the (required) level of severity,... and no testing, imaging, pathology, or examination findings indicating a liver or digestive impairment."[65] The ALJ further reasoned that no examining or treating medical provider determined that Claimant's physical impairments met or equaled any of the listed ones.[66] Therefore, the ALJ determined that Claimant's impairments did not meet any of the listed impairments.

At Step 4, the ALJ noted that Claimant has past relevant work as a "corrections officer, in security operations and as a security officer, as a customer service representative at

---

[60] AR 16.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] AR 18.
[65] *Id.*
[66] *Id.*

Cigna, and as a temporary secretary."[67] The ALJ then determined Claimant is unable to perform her past relevant work.[68]

Finally, at Step 5 the ALJ concluded that Claimant has the residual functional capacity to perform "at least sedentary work...limited to simple routine work and should avoid moderate exposure to noxious substances, fumes, dusts, and gases, or to hazardous conditions including unprotected heights or dangerous moving machinery."[69] The ALJ considered Claimant's age, education, work experience, and residual functional capacity, and found jobs that exist in significant numbers in the national economy that Claimant could perform.[70]

It is undisputed that Claimant has not worked since the onset of her disability which occurred October 17, 2007.[71] In accord with that fact, the ALJ correctly concluded that the Claimant has not engaged in substantial gainful activity since October 17, 2007.

At Step 2, the ALJ must consider the medical severity of a claimant's impairments.[72] To qualify for disability a claimant must have a severe medical impairment.[73] A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities.[74] By contrast, an impairment is "not severe" where medical evidence establishes only a slight abnormality or a combination thereof which would have no more

---

[67] AR 23.
[68] *Id.*
[69] AR 19.
[70] AR 23.
[71] AR 16.
[72] 20 C.F.R. § 404.1520(ii)(2011).
[73] *Id.*
[74] 20 C.F.R. § 404.1520(c)(2011).

than a minimal effect on a claimant's ability to perform basic work activities.[75] Additionally, the ALJ must consider the aggregate effects of the claimant's impairments, including those that even in isolation are not severe.[76] Finally, an ALJ's conclusion that a claimant does not have a severe impairment or combination of impairments must be supported by substantial evidence.[77]

In this case, lab test results completed in April 2007 diagnosed Claimant with a fatty liver, among other ailments.[78] By August of that same year, her condition worsened to NASH,[79] a chronic liver disease.[80] A year later, her condition continued, even with treatment, to worsen to stage 3 liver disease and "well established cirrhosis."[81] The onset of NASH in addition to documented impairments of obesity, fibromyalgia, bilateral hand paresthesias, and lumbar degeneration of the disc are severe impairments because as a whole they significantly limit Claimant's physical or mental ability to do basic work activities. The ALJ correctly considered these impairments to be severe.

The ALJ also determined that Claimant had the following non-severe impairments: vertigo, dizziness, epistaxis, reactive airway disease, GERD, migraine headaches, mild diverticulosis, and IBS.[82] The ALJ reasoned these impairments were non-severe because they were "long-standing conditions controlled with treatment."[83] However, in making a

---

[75] *Id.*
[76] 20 C.F.R. § 404.1523(2011).
[77] *Id.*
[78] AR 317.
[79] AR 368, 70.
[80] 20 C.F.R. § 404, Subpt. P, App. 1 (2011).
[81] AR 659.
[82] AR 17.
[83] *Id.*

-11-

determination as to whether a claimant's physical or mental impairments are severe, the ALJ must also consider the *combined effect* of all of the claimant's impairments.[84] This requires an analysis of the combined impact of both the severe and non-severe impairments on a claimant's ability to function.[85] In this case, it appears that the ALJ failed to consider the combined impact.[86] Instead, the ALJ considered each of the non-severe impairments individually under 20 C.F.R. § 404.1521 and in combination with the other non-severe impairments under 20 C.F.R. §416.921, but she did not consider the combination of all the non-severe impairments with the severe impairments as required by 20 C.F.R. § 404.1523.[87]

When an ALJ finds a medically severe combination of impairments, she must consider the combined impact of all a claimant's impairments throughout the disability determination process. That means, the ALJ must not only consider the combination of impairments at Step 2, but also thereafter. Step 3 requires the ALJ to consider whether the claimant has an impairment that meets or equals one of the listed impairments under Appendix 1 of 20 C.F.R. § 404.1520 (Evaluation of Disability; Listing of Impairments). The listings streamline the disability decision process by identifying claimants whose impairments are so severe that they are likely to be found disabled without the need to review their vocational background under Steps 4 and 5.[88] It is not enough, however, to show that a claimant's impairment equals one of the listed impairments in order to find her per se disabled; rather, the claimant

---

[84] 42 U.S.C.A. § 423(d)(2)(B).
[85] *Id.*
[86] AR 17.
[87] *Id.*
[88] *Bowen v. City of New York,* 476 U.S. 467, 471 (1986).

must show that her impairment meets or equals severity and duration requirements for the applicable impairment.[89]

Both Steps 2 and 3 look to severity, but Step 3 focuses on whether a claimant's impairment is severe enough to prevent a person from doing any significant gainful activity.[90] In this case, at Step 3, the ALJ considered the listed impairments in Sections 1.04 ("Disorders of the Spine under Musculoskeletal System"), 5.05 ("Chronic Liver Disease under Digestive System"), and 12.04 ("Affective disorders under Mental Disorders") of Appendix 1.[91] She determined that Claimant Haney's impairments did not equal any one of the listed impairments, stating Claimant did not meet any of the specific requirements in the listings.[92] The ALJ reasoned this because "the medical evidence did not establish limitations of listing level severity."[93] However, as noted above in connection with Step 2, the ALJ did not consider the combined effect of all Claimant's severe and non-severe impairments as required by 20 C.F.R. §404.1523.

The ALJ's failure to consider the combined effect of all Claimant's impairments makes it impossible for this court to be sure that her decision is supported by substantial evidence. While the ALJ may have reached the correct conclusion, the omission in her analysis requires the court to remand this matter so the omission may be cured.

---

[89] *Young v. Sullivan,* 911 F.2d 180 (9th Cir. 1990).
[90] *See* 20 C.F.R. §404.1525(a)(2011).
[91] AR. 18; *See* 20 C.F.R. § 404.1520, Subpt. P, App. 1 (2011).
[92] AR. 18.
[93] *Id.*

## V. CONCLUSION

Based on the foregoing, Claimant's Motion for Summary Judgment at docket 17 is DENIED without prejudice, and this matter is REMANDED to the Commissioner for further proceedings consistent with this decision. The Clerk will please enter judgment accordingly.

DATED this 3rd day of October 2011.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE